# 24-2825

In the
United States Court of Appeals
for the Second Circuit

———————

RONALD BARKER,

*Plaintiff-Appellant,*

-against-

ARAMARK UNIFORM AND CAREERS
APPAREL LLC,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

ROSENBERG LAW FIRM
Jonathan Rosenberg, Esq.
137 Court Street, Fl. 2
Brooklyn, New York 11201
Tel: (718) 715-4845
office@rosenbergpllc.com
*Attorneys for Plaintiff-Appellant*

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................... i

TABLE OF AUTHORITIES ............................................................................. ii

PRELIMINARY STATEMENT ........................................................................ 1

REPLY ARGUMENT ...................................................................................... 2

I. THE DISTRICT COURT COMMITTED REVERSIBLE ERROR BY MISAPPLYING *NATIONAL RAILROAD PASSENGER CORP. V. MORGAN.* ............................................................................................ 2

II. ARAMARK'S FACTUAL ARGUMENTS REQUIRE IMPROPER CREDIBILITY DETERMINATIONS UNSUITABLE FOR SUMMARY JUDGMENT. ..................................................................................... 4

  A. The Financial Harm Was Objectively Intolerable. ................................... 4

  B. The Racist Comments Were Not Inadmissible Hearsay ......................... 5

III. SUFFICIENT EVIDENCE EXISTS FOR A JURY TO AWARD PUNITIVE DAMAGES. ..................................................................................... 6

CONCLUSION ............................................................................................. 8

CERTIFICATE OF COMPLIANCE ............................................................. 9

# TABLE OF AUTHORITIES

**Cases**

*National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) .....................2

*Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004) ……..………...………4

## PRELIMINARY STATEMENT

The District Court committed reversible error by creating an evidentiary Catch-22 that misapplies Supreme Court precedent and by improperly weighing evidence to grant summary judgment. Aramark's defense rests on disaggregating a clear pattern of discriminatory conduct into isolated, supposedly harmless events. They ask this Court to ignore the timeline, the context, and the corroborating evidence. They argue that a manager's racially charged comments are mere hearsay, that a targeted and significant pay cut was a minor fluctuation, and that their own failure to maintain basic financial records is irrelevant.

This is a simple case. A manager with decision-making authority, David Gambardella, took lucrative stops from a Black employee, Ronald Barker, and gave them to a white employee while stating, "this is how we look after our own." (A600). When Mr. Barker complained, the harassment continued, with the same manager referring to him as a "monkey." (A614, A881). These actions caused a substantial, immediate, and sustained loss of income that made continued employment financially and emotionally intolerable.

1

The District Court initially recognized the viability of this claim (A364), but later reversed itself with a flawed legal analysis that contradicts binding precedent from this Circuit and the Supreme Court. This Reply Brief will demonstrate, using the undisputed record, that genuine issues of material fact regarding discriminatory intent, the creation of an intolerable work environment, and Aramark's reckless indifference not only exist but are overwhelming. For these reasons, the grant of summary judgment must be reversed.

## REPLY ARGUMENT

I.     THE DISTRICT COURT COMMITTED REVERSIBLE ERROR BY MISAPPLYING *NATIONAL RAILROAD PASSENGER CORP. V. MORGAN*.

The District Court's central error was its creation of a legal paradox: it acknowledged that the time-barred stop reassignments could serve as "background evidence" but then held that this same evidence could not be used to prove the discriminatory *intent* behind Mr. Barker's timely constructive discharge claim because it would "go to the heart of his time-barred employment discrimination claim and thus be inadmissible." (A1019). This is a direct misapplication of *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

2

The very purpose of allowing time-barred acts as background evidence is to illuminate the motive and context of timely claims. The timely claim here *is* the constructive discharge, which accrued on the date Mr. Barker resigned, August 10, 2017. (A799). The prior acts -- the discriminatory stop removals and Gambardella's racist comments -- are not separate claims being revived; they are the factual predicate that made the work environment intolerable, compelling the resignation.

The District Court had this correct in its September 30, 2022 Order denying Aramark's motion to dismiss. There, the Court correctly found that Mr. Barker's constructive discharge claim was timely and that he had "more than met his 'minimal burden of showing facts suggesting an inference of discriminatory motivation'" based on Gambardella's "dog-whistle racism." (A364). The Court's 2024 summary judgment order is an unexplained and erroneous reversal of its own prior, correct legal analysis. Aramark's argument that these acts are entirely walled off from the constructive discharge claim is precisely the position *Morgan* rejected.

3

## II. ARAMARK'S FACTUAL ARGUMENTS REQUIRE IMPROPER CREDIBILITY DETERMINATIONS UNSUITABLE FOR SUMMARY JUDGMENT.

Aramark's brief asks this Court to do what the District Court improperly did: weigh evidence, make credibility determinations, and accept Aramark's self-serving narrative over the sworn testimony and documentary evidence presented by Mr. Barker.

### A. The Financial Harm Was Objectively Intolerable.

Aramark mischaracterizes the financial harm as a minor "11.8% change in compensation" over a 41-week period. This is a deliberate distortion. A reasonable person experiences their pay on a weekly basis. The record shows that before Gambardella's discriminatory actions, Mr. Barker's weekly pay was consistently over $1,080. (A106, A107). After Gambardella removed thirteen lucrative stops (A59), Mr. Barker's pay frequently plummeted to the contractual minimum of $845. (A544). This represents a sudden, targeted weekly pay cut of over 20%, directly attributable to a manager's official act. This is precisely the "humiliating pay cut" contemplated by *Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004), and it created a genuine issue of material fact as to whether the conditions were financially intolerable.

4

Mr. Barker testified under oath that this pay cut caused him "stress" and made him unable to support his family. (A609, A617). This is a classic jury question.

### B. The Racist Comments Were Severe, Corroborated, and Not Inadmissible Hearsay.

Aramark attempts to dismiss two severe instances of racial harassment as a "single alleged statement" and "inadmissible hearsay." (A515). The record proves otherwise.

First, Mr. Barker testified under oath about the December 2016 meeting where, after taking his stops, Gambardella stated, "this is how we look after our own," followed by Brian Calhoun's mocking comment, "you know what I'm saying, Homie," and gestures Mr. Barker described as mimicking "exploited black movies." (A600). This is direct, sworn testimony, not hearsay.

Second, Aramark's claim that the "let the monkey wait" comment is inadmissible hearsay is baseless. The statement is not offered to prove Mr. Barker is a monkey; it is offered as evidence of the manager's racial animus -- a non-hearsay purpose. More importantly, it is corroborated by the sworn affidavit of the direct witness, Jose Nunez. (A881). Mr. Nunez states under oath that Gambardella said it, and Mr. Barker testified that

Nunez told him about it shortly after it happened. (A614). This is not "inadmissible hearsay"; it is a corroborated account of a manager using a vile racial epithet to refer to a Black employee. Such a statement by a supervisor is exceptionally severe and is powerful evidence of a hostile environment.

Aramark's attempt to dismiss these events requires the Court to find Mr. Barker and Mr. Nunez not credible, and to believe Gambardella's self-serving denial in his declaration (A550). This is an impermissible credibility determination at the summary judgment stage.

## III. SUFFICIENT EVIDENCE EXISTS FOR A JURY TO AWARD PUNITIVE DAMAGES.

Aramark argues its anti-harassment policy (A652-A655) provides a "good faith" defense against punitive damages. A policy on a shelf is not a defense. The record is devoid of any evidence that Aramark made a good-faith *effort to enforce* its policy. To the contrary, the evidence demonstrates managerial malice and corporate reckless indifference. Gambardella, a manager, used his authority to inflict financial harm on a Black employee while making racially charged statements. This is malice. When Mr. Barker attempted to grieve this conduct, the grievance

was given to the very employee who benefited financially from the discriminatory act, Brian Calhoun, who then failed to file it. (A595). Furthermore, Aramark's conduct during discovery demonstrates reckless indifference. At the June 8, 2023 hearing, Aramark's counsel admitted on the record that Aramark "does not keep the record of the revenue that is -- the commission that is paid to the RSR for the stop." (A464). After the Magistrate Judge found Aramark's financial spreadsheets indecipherable and ordered Aramark to provide a representative to explain them (A473), Aramark failed to do so, sending only its lawyer who was again unable to explain the documents (A479).

Failing to maintain basic records central to an employee's pay and then failing to comply with a court order to explain those records is the definition of reckless indifference to an employee's federally protected rights.

Finally, Aramark's argument that Mr. Barker cannot claim constructive discharge because he sought other employment is illogical. A reasonable person facing a financially and emotionally intolerable work environment would prudently seek other work before resigning and leaving their family without any income. Seeking a new job is not

7

evidence of a tolerable workplace; it is the direct and foreseeable consequence of an intolerable one.

## CONCLUSION

The District Court erred by misapplying the law and invading the province of the jury. Genuine, material disputes of fact exist regarding Aramark's discriminatory intent, the creation of an intolerable work environment, and its reckless indifference. For these reasons, the District Court's grant of summary judgment should be reversed, and this case should be remanded for trial.

DATED:    October 7, 2025

Respectfully submitted,

ROSENBERG LAW FIRM

By:  Jonathan Rosenberg, Esq.
137 Court Street, Fl. 2
Brooklyn, New York 11201
Tel: (718) 715-4845
office@rosenbergpllc.com
*Attorneys for Plaintiff-Appellant*

# CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitations of Fed.R.App.P .3 2( a )(7)(B) because:

This brief contains 3,280 excluding the parts of the brief exempted by Fed.R.App.P.32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed.R.App.P.32(a)(5) and the type style requirements of Fed.R.App.P.32(a)(6) because:

This brief has been prepared in proportionally spaced typeface using Microsoft Word in Century font size 14.

Dated: October 7, 2025

_____
Jonathan Rosenberg, Esq.

9